UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THOMAS HILLERY, an individual, and as Guardian Ad Litem for MARY JANE HILERY, an adult,<br><br>Plaintiffs,<br><br>v.<br><br>SUN CITY ANTHEM COMMUNITY ASSOCIATION, INC.; DOE INDIVIDUALS 1 through 100; ROE BUSINESS ENTITIES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:17-CV-02639-MMD-EJY<br><br>**ORDER** |

Before the Court is Defendant Sun City Anthem Community Association's Motion to Strike Plaintiffs' Expert Dale H. Stephens (the "Motion") on Order Shortening Time. ECF No. 50. The Court has considered Defendant's Motion, Plaintiff's Response (ECF No. 56), and Defendant's Reply (ECF No. 60). The Court finds as follows.

## BACKGROUND

This case involves a woman and her adult son who live in Sun City Anthem ("SCA"), an age restricted community, which provides certain amenities to its residents. There are questions of fact and law regarding whether the community amenities are "Places of Public Accommodation" as defined in 42 U.S.C. § 12181(7); 28 C.F.R. 36.104 of the Americans with Disabilities Act ("ADA"); however, this question is not before the Court; and, it is not necessary for the Court to decide this issue as it considers Defendant's Motion..

Plaintiffs, Thomas Hillery, who is acting as Guardian ad Litem for his mother, Mary Jane Hillery, allege that the SCA Community Association violated the Fair Housing Act ("FHA"), the ADA, and Nevada law when it (i) failed to provide reasonable accommodation to Mrs. Hillery, who is alleged to suffer from dementia and, therefore, alleged to be disabled, (ii) discriminated against Mrs. Hillery by subjecting her "to a rule with special terms and conditions directed specifically at her because of her protected status – a rule with which she cannot possibly comply as a result of her

1

handicap – and subsequently fining her and threatening her with potential arrest . . .," and (iii) generally deprived Mrs. Hillery of the use and enjoyment of the SCA facilities and amenities because of her disability.

This case, which is contentious, began in two years ago in October 2017, when Mrs. Hillery was 86 years old. As stated in Court by Plaintiff's Counsel, Mrs. Hillery is now 88. There is no resolution of this dispute in sight.

In the course of growing closer to trial, Plaintiffs retained Dale H. Stephens, an architect with 45 years of practice, as an expert "to evaluate the claims made against … SCA … Community Association in connection with the treatment" of Mr. Hillery and his mother Mrs. Hillery "during their use of SCA facilities." ECF No 50-1 at 2 (the Expert Witness Disclosure and Report (the "Report") written by Mr. Stephens). In his Report, Mr. Stephens states that he was asked to give his opinion "of Disabled Access and Reasonable Accommodation, and Sun City Anthem Community Association's performance of its professional duties as Administrator of the SCA Anthem Center." *Id.* Mr. Stephens also states that he "was asked to specifically evaluate and offer … [his] opinion on the role assumed by Sun City Anthem Community Association in their treatment of Mrs. Hillery's disability." *Id.*

In the qualifications sections of the Report, Mr. Stephens states (in addition to his years as an architect) that: (1) he has "designed many project types"; (2) he has "extensive experience with the … ADA … and … FHA … in helping resolve litigation disputes"; (3) "most of the[] disputes" on which he is "retained are resolved" through "site visits" during which Mr. Stephens views "existing conditions" leading to development of a "compliance plan"; (4) he maintains a continuation education file with the American Institute of Architects (the "AIA"); and (5) he has been recognized by the AIA, spoken at AIA conferences, and been published in various magazines and newspapers. ECF No. 50-1 at 2. Mr. Stephens also identifies his retention as an expert in seven other cases over the last four years. *Id.* At the end of the Report Mr. Stephens lists all of his expert retentions. *Id.* at 21-30 of 31. Details of Mr. Stephens' retentions show that he has been retained on numerous cases involving remediation of noncompliant accessibility issues arising under the Americans with Disabilities Act Accessibility Guidelines. There are also a number of eminent

2

domain cases, slip and fall cases, and "litigation support" cases "involving" ADA and FHA requirements. There is no case listed in which it is apparent that Mr. Stephens was retained to opine on whether (1) a specific entity is a place of "public accommodation," (2) a particular condition or illness is a "disability," (3) an accommodation would pose an un undue burden or "fundamentally alter the essential nature" of the business at issue, (4) an individual poses a "direct threat" (as defined by the ADA), (5) a "direct threat" can be mitigated by an accommodation, or (6) an individual complainant was intimidated, harassed or coerced based on a business entity's treatment of such complainant. *See* EFC No. 50-1 generally. Mr. Stephens' qualifications, as he describes them in his Report, does not include any, let alone expansive, experience with or knowledge of any of these subject matters. *Id.* Nor does Mr. Stephens enumerate education or training of any kind in these subject matters. *Id.*

Mr. Stephens offers eight professional opinions in his Report. These include:

1. The SCA Anthem Center is not a "Private Club according to the referenced definition of the" ADA;

2. The fitness center at the SCA Anthem Center is a place of "'Public Accommodation' according to the definitions found in the ADA" and deposition testimony provided by "Seddon";

3. Dementia is a disability under the ADA and FHA and, as such, Mrs. Hillery was entitled to a reasonable accommodation by the Board of the SCA Community Association;

4. The SCA "made no meaningful attempt to comply with the ADA & FHA" as required by these laws because the SCA treated Mrs. Hillery as "non-accommodable" due to a "health and safety issue";

5. Even if SCA's "efforts were considered good faith," they fell short of what is required "to comply with ADA & FHA … standards because SCA must be made available to people with disabilities in the most equal and integrated way possible";

6. "[C]*onditioning* Mrs. Hillery's access upon bringing her own caregiver ... was … the most unequal and non-integrated approach to accommodating her." (Emphasis in original). There were many less "severe" accommodations including monitoring "unsafe fitness areas," "better training for SCA staff," providing Mrs. Hillery with a "chaperone … while she was on site" and "many … other[s]";

7. Providing any of the possible accommodations "would not have fundamentally altered SCA's business" or "presented an undue burden" for SCA, and Mrs. Hillery did not pose a "direct threat" to herself or others; and,

3

8. "SCA intimidated, harassed and coerced" Mr. Hillery and Mrs. Hillery when it banned them from all SCA common areas, trespassed Mrs. Hillery, and reported Mrs. Hillery and her son, Mr. Hillery, to "the authorities."

ECF No. 50-1 at 3-4.

In Defendant's Motion, Defendant argues that the Report and Mr. Stephens as an expert must be struck because Mr. Stephens offers legal conclusion rather than expert opinions. ECF No. 50 at 2:23; 3:23.

**DISCUSSION**

I. Rule 702 of the Federal Rules of Evidence

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Barabin v. Asent Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explains that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy, as stated by the court, requires "the evidence … logically advance a material aspect of the party's case." *Id*. (Citation omitted.) Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumbo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993). The role of the Court, however, is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id. citing Primiano v. Cook*, 598, F.3d 558, 564 (9th Cir. 2010).

4

When considering reliability, a flexible concept, the U.S. Supreme Court suggests several factors for the Court to consider, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000) (citing *Daubert,* 509 U.S. at 592–94). But, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Barabin*, 740. F.3d at 463 *citing Kumho Tire,* 526 U.S. at 153. As explained in *Barabin*, "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 464 *citing Daubert*, 509 U.S. at 589.

II.      Rule 704 of the Federal Rules of Evidence

Rule 704, of the Federal Rules of Evidence, states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Thus, while testimony on an ultimate issues in a case is not "per se improper[,] . . . an expert witness cannot give an opinion as to her legal conclusions, *i.e.,* an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citations and emphasis omitted). In *Hangarter*, a bad faith insurance case, the Court explained that while the expert's testimony that defendants "deviated from industry standards supported a finding that they acted in bad faith," the expert did not testify that he had reached the "legal conclusion that [d]efendants actually acted in bad faith." *Id*. The opinion regarding deviation from industry standards is admissible; whereas, a conclusion that defendants acted in bad faith is not. *Id.* (Citations omitted.)

Likewise, in *Kohler Co. v. Watts Water Technologies, Inc.*, Case No. CV-06-0143, 2009 WL 4263556, at * 3 (C.D. Cal., March 17, 2009), the court states "that testimony 'embracing' the ultimate issue of fact is admissible, while testimony flatly stating a conclusion of law is not." Giving examples, the court explained: "'Was there a contract?' would be excluded, while the question, 'Was the agreement in the usual general form of a corporate indemnity agreements?' would be allowed." *Id*. This distinction is important in the case at bar.

5

III. <u>The Court's Gatekeeper Role</u>

In addition to whether the expert opinions at issue includes actual legal conclusions on the matters at issue, the Court must be cognizant of its overall roll as gatekeeper, an active and important role when examining "all forms of expert testimony, not just scientific testimony." *Hangarter*, 373 F.3d at 1017 (citation omitted). As explained in *Hangarter*, the Ninth Circuit "require[s] a district court to make some kind of reliability determination to fulfill its gatekeeping function." *Id.* at 1018 *citing Mukhtar v. v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) *overruled*, *in part*, *on other grounds*, *Barabin*, 740 F.3d at 467. The Court's gatekeeping obligation to admit only expert testimony that is reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar,* 299 F.3d at 1063–64. Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 *citing Daubert*, 509 at 588.

IV. <u>Mr. Stephens' Expert Opinions</u>

    *A.    Opinions 1 and 2 are Conclusions of Law and are Therefore Inadmissible.*

Mr. Stephens expert report, Opinions 1 and 2, state legal conclusions. Specifically, Mr. Stephens states that the SCA Anthem Center is not a "Private Club," but "is a [Place of] Public Accommodation according to the definitions of the ADA." ECF No. 50-1 at 3, Opinions 1 and 2. Unlike the example in *Hangarter*, in which an expert stated that defendants' conduct deviated from industry norms relying, in part, on state law to reach his conclusion, here, Mr. Stephens states the legal conclusion–that the area at issue in this case is definitively a place of public accommodation.

The Court examined what case law there is analyzing expert opinions in the context of Title III ADA claims that are at least somewhat aligned with the purpose of Plaintiff's expert's opinions in this case. For example, Mr. Stephens' opinions are distinguishable from statements made by a plaintiff regarding what ADA accessibility violations the plaintiff encountered when "attempting to use the 'accessible' parking space." *Kalani v. Castle Village LLC*, 14 F.Supp.3d 1359, 1367 (E.D. Cal. 2014). Although the plaintiff's statements embraced the legal issue of whether the parking area designated for the disabled was ADA compliant, the court found the testimony was "not a legal

conclusion" regarding whether an individual was "being denied the full and equal enjoyment of a public accommodation" but eye-witness testimony that could be considered by the court. *Id*. at 1367, and at n. 21.

Even more on point is the Court's decision in *National Association of the Deaf v. District Hospital Partners, L.P.*, Case No. 14-1122, 2016 WL 447444 (D.D.C., February 4, 2016). In *National Association of the Deaf*, the defendant offered testimony from a well qualified expert in ADA accessibility requirements for the deaf. *Id.*, at *3. The expert's report stated that "the Hospital's policy as a whole complies with the ADA . . .." *Id.* The court considered this opinion and rejected it because the "proffered testimony . . . inappropriately opines of whether the legal standard has been satisfied." *Id.*, at *4.

More specifically, in *National Association*, the expert was asked to evaluate whether hospital policies and practices were compliant with applicable statutory and regulatory requirements of Title III of the ADA. *Id.*, at *4. As a preliminary matter, the Court stated that this was an inappropriate request. *Id.* Thereafter, the Court found the expert's conclusion that was "a patently legal one." *Id*. The fact that the expert compared factual evidence (the hospital's policies and practices) to regulatory requirements did not change this outcome. *Id.*, at **4-5. The Court stated: "the thrust of … [the expert's testimony], as indicated by her report, tracks the language of the applicable regulation, provides testimony as to whether the legal standard has been satisfied, and offers an opinion that merely tells the jury what result to reach. … That testimony therefore usurps the factfinder's role." *Id*. at 5 (internal quotation marks and citations omitted). The same is true here with respect to Mr. Stephens' first two opinions.

As noted in *Kalani v. Starbucks Corporation*, 81 F.Supp.3d 876, 884 (N.D. Cal. 2015) (internal citation omitted), a plaintiff states and prevails on a Title III ADA discrimination claim if she shows, among other things, that "the defendant is a private entity that owns, leases, or operates a place of public accommodation." And, the Court distinguished between an expert testifying "to findings that support the ultimate issue" and "[c]onclusory opinions" that a facility is or is not compliant with "'with all [ADA] applicable access requirements' [which] constitute improper legal conclusions." *Id*. at 882 (citation omitted).

7

In the case at bar, Plaintiff's expert enumerates the basis for his conclusions that the SCA Anthem Center is a place of public accommodation by citing to definitions found of private club found at www.ada.gov/regs2010/titleiii_2010/titleIII_2010_regulations.htm#a10. ECF No. 50-1 at 4. Plaintiff's expert also quotes the following:

> Civil Rights Act of 1964 (42 U.S.C. 200a(e)(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

ECF 50-1 at 5. This incomplete quote, which is not followed by a citation, is then followed by a reference to a deposition that identifies a name, but not the role or position held by the person speaking, in which the speaker evidently made statements to the effect of: "Don't check resident cards at parking lot sales (p149: 1-8) [sic], Only [sic] access to private massage business is through fitness center (p149: 6-17)[.]" *Id*. Immediately after these incomplete sentences, Plaintiff's expert states that "[t]he fitness center is located within the premises and the only access to the private massage business, which is covered by the 1964 Civil Rights Act, is through the fitness center." *Id*. In conclusion, Plaintiff's expert states: "[a]lso, membership is not checked or enforced for building entry or parking lot sales, both of which comprise the premises, so the entire premises is not qualified <u>in fact</u> for the Private Club classification." *Id.* (underline in original).

While citations to the ADA regulations and the apparent incomplete quotes from a deposition do not render Mr. Stephens' opinions *per se* impermissible, the totality of Mr. Stephens' opinions reach a legal conclusion that the facility at issue is, "<u>in fact</u>," covered by Title III of the ADA because it is a place of public accommodation. ECF No. 50-1 at 3.[1] That Plaintiff's expert compared a small amount of factual evidence to regulatory definitions does not change this outcome. In sum, the thrust of these opinions state whether a legal standard has been satisfied and, as such, tells the jury what result to reach on a central issue to the case; that is, whether the SCA community amenities ("the

---

[1] That SCA's community amenities are places of public accommodation is a condition precedent to the requirement that it provide reasonable accommodations as a matter of law. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 930 (9th Cir. 2007) (citations omitted). Thus, the question of whether SCA is a place of public accommodation is clearly at issue and central to the entire case brought by Plaintiffs against Defendant.

8

entire premises") at issue are a place of public accommodation. For these reasons, the Court strikes Mr. Stephens' Opinions 1 and 2 as stated on page 3 of his Report. ECF No. 50-1 at 3.

    *B.    Mr. Stephens' Opinion 3 is Inadmissible.*

        1.    <u>Mr. Stephens' Professional Opinion that Dementia is a Covered ADA Disability is not Reliable, not Supported by his Qualifications, and is a Legal Conclusion.</u>

Plaintiff's expert states that his qualifications are as a 45 year architect, involved in many ADA and FHA litigation disputes, most of which were "resolved with a site visit to view existing conditions [and] develop[ment of] a compliance plan . . .." ECF No. 50-1 at 2. Nowhere in the Report does Mr. Stephens provide any information regarding any background, experience, education or training demonstrating an expertise in identifying what is or is not a disability under the ADA. Mr. Stephens identifies nothing that supports the conclusion that he possesses any scientific, technical, or other specialized knowledge in the field of determining whether any ailment or limitation of any kind is or is not a disability. *See* ECF No. 50-1 generally.

Further, Mr. Stephens cites to no methodology, research, review, analysis, experience, or other basis of any kind upon which he relied for his conclusion that dementia is a disability under the ADA. *Id*. In fact, when reaching this conclusion, Mr. Stephens cites only to the definition of a disability, as set forth in the ADA, a quote from the FHA, and a single statement that "Dr. Sharda's medical report … was received by the SCA Community Association on 6/23/16." *Id.* at 5-6. As stated above, determining the admissibility of an expert's opinion encompass "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Barabin,* 704 F.3d at 463 *citing Kumbo Tire*, 526 U.S. at 149. Mr. Stephens appears to have no stated basis for his conclusion other than perhaps agreeing with a medical provider's opinion and legal definitions. He states no knowledge or experience in the relevant discipline—that is, the discipline of determining what qualifies as a "disability" under the ADA.

In sum, without determining the "correctness" of Mr. Stephen's conclusions, but instead looking for the reliability and "soundness of his methodology," the Court finds Mr. Stephens fails to provide a reliable basis for his expert opinion regarding dementia, fails to establish the necessary

qualifications to reach his opinion regarding dementia, and therefore fails to demonstrate the required foundation for the admissibility of his expert opinion. *Barabin*, 740 F.3f at 463 (citations omitted), *Primiano*, 598 F.3d at 564 (citation omitted).

Finally, given the information on which Mr. Stephens does rely, the Court finds Mr. Stephens' opinion does nothing more than offer a legal conclusion that tells the jury what result to reach. This legal conclusion, that dementia is a disability under the ADA, offered as an opinion by Mr. Stephens, is inadmissible.

For all the reasons stated above, the Court strikes that portion of Mr. Stephens' Opinion 3 stating that "It is my professional opinion that Dementia is a covered disability under the ADA and FHA." ECF No. 50-1 at 3.

2. <u>Mr. Stephens "Professional Opinion" that "Mrs. Hillery (as a person having Dementia)" was Entitled to a Reasonable Accommodation by the SCA, Pursuant to the ADA and FHA, is Inadmissible.</u>

Mr. Stephens next opines that "Mrs. Hillary (as a person having Dementia) was due a 'Reasonable Accommodation' by … the SCA Anthem Center pursuant to the requirements of the ADA and FHA." *Id.* Mr. Stephens does not, as many experts do, and are allowed to do, make the assumptions that (i) Mrs. Hillery suffers from dementia, or that (ii) dementia is a covered disability under the ADA and FHA. *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (an expert can use assumptions, inferences, and comparisons, which are admissible, but subject to impeachment). Instead, Mr. Stephens states these conclusions as the bases for his opinion that Mrs. Hillery was entitled to a reasonable accommodation. ECF No. 50-1 at 3.

It is true that Plaintiff was retained as an expert to opine on the treatment of Mrs. Hillery by Defendant based on her disability; however, this portion of Mr. Stephens' Report does not speak to how Mrs. Hillary was treated, but instead restates his legal conclusions that Mrs. Hillary suffers from dementia and that dementia is a disability under the ADA and FHA. Mr. Stephens then asserts, as an expert opinion, a statement of law. Specifically, Mr. Stephens states that the disabled are "due" reasonable accommodations "pursuant to the requirements of the ADA and FHA." ECF No. 50-1

at 6.[2] This law, however, is undisputed: under the ADA and FHA, individuals with disabilities are entitled to modifications that reasonably accommodate those disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii); 42 U.S.C. § 3604(f)(3)(B). Thus, Mr. Stephens' opinion reiterating this statement of law is not offering his specialized knowledge to help the trier of fact understand evidence or determine a fact in issue. Instead, Mr. Stephens is repeating settled law that, even assuming he is qualified to do, would not be "opinion."

As explained above, Mr. Stephens is not qualified to offer admissible expert opinions regarding what ailments or conditions are disabilities under the ADA, whether the plaintiff is disabled, or what law the finder of fact should apply in this case. Thus, while Mr. Stephens could have stated that he understood the ADA and FHA to require certain things based on his substantial experience, Mr. Stephens' statement of the law as a "professional opinion" is not admissible. *National Association of the Deaf*, 2016 WL 447444, at *4. As such, that Mr. Stephens' Opinion 3 is struck in its entirety.

    *C.    Mr. Stephens' Fourth Opinion, While Shaky is Admissible*.

Mr. Stephens' fourth opinion is based on his perception of fact—what SCA did or did not do in an attempt to "meaningfully" comply with ADA and FHA accommodation requirements—and alleged improper treatment of Mrs. Hillery as "non-accommodable" based on his understanding of the law. Unlike Mr. Stephens Opinions 1 through 3, these statements are not mere legal conclusions. While Mr. Stephens relies on his understanding of the law, and embraces the requirements of the law, he is applying his alleged expert understanding of access to places of public accommodation (something Mr. Stephens' Report reflects he has done on multiple occasions previous to issuing his current Report) to this particular situation without drawing a legal conclusion. *See Kohler*, 2009 WL 4263556, at *3.

---

[2] Mr. Stephens' report, he first copies and pastes relatively long passages from the ADA, and then a short passage from the FHA under the heading **"Reasonable Accommodation."** (Emphasis in original.) ECF No. 50-1 at 6. Mr. Stephens then begins a discussion of deposition testimony by "Seddon." *Id.* This discussion goes on to page 7 of the report and addresses Mr. Stephens' next opinion (Opinion 4) regarding whether the SCA made a meaningful attempt to accommodate Mrs. Hillery. Opinion 4 is discussed separately above.

11

Specifically, Mr. Stephens cites the deposition of "Seddon" who apparently stated under oath that the SCA Board of Directors, managers, and employees did not receive ADA or FHA training and have never evaluated other accommodations. ECF No. 50-1 at 6. "Seddon" also apparently stated "[w]e don't determine if someone needs a caregiver," and that he, or they, "never discussed if dementia [sic] a protected disability." *Id.* Based on these statements, Mr. Stephens' offers the "opinion" that SCA "did nothing to meaningfully accommodate Mrs. Hillery's disability." *Id.* at 7. Mr. Stephens also states that SCA "did nothing else to accommodate Mrs. Hillery's disability, let alone discuss [sic] no other solutions or accommodations whatsoever." *Id.* Mr. Stephens then states that SCA treated Mrs. Hillery as having engaged in "behavioral violations under the SCA CC&R's." *Id.* Together, according to Mr. Stephens, SCA failed to meaningfully accommodate Mrs. Hillery. *Id.*

Mr. Stephens' expertise appears to be in accessibility (including accommodations) under the ADA and FHA. Thus, although these opinions are certainly subject to attack on examination or cross examination, with contrary evidence, and attention to the burden of proof, these opinions are not subject to exclusion simply because they embrace an ultimate question in the case. *Primiano*, 598 F.3d at 564.

As explained in *National Association of the Deaf*, "the line between inadmissible legal conclusions and admissible assistance to the trier of fact in understanding the evidence or determining a fact in issue is not always bright." 2016 WL 447444 at *3 (citation omitted). And, the correctness of the conclusions Mr. Stephens reached is not what the Court has reviewed. *Barabin*, 740 F.3d at 463. The Court's discretion in determining admissibility is broad. *Id.* (citation omitted). The Court finds while a portion of Opinion 4 tracks language in the law, the Opinion does not go so far as to state whether legal requirements were met. Opinion 4 is based on Mr. Stephens' application of specific facts in this case leading to an opinion that the one accommodation offered was not meaningful.

As such, the Court finds Mr. Stephens' Opinion 4 is admissible at this stage of the proceeding.

### D. Mr. Stephens' Fifth Opinion is Unreliable and an Inadmissible Legal Conclusion.

Mr. Stephens' fifth "professional opinion" states that even if SCA made good faith efforts to accommodate Mrs. Hillery, these efforts "fell short of standards because SCA must be made available to people with disabilities in the most equal and integrated way possible." ECF No. 50-1 at 3. Support for this opinion, appears as a tautology on page 8 of the Report where Mr. Stephens states: "activities must be made available to people with disabilities in the most equal and integrated way possible . . . [and] SCA ... failed to comply with the requirements of the ADA." These statements are not admissible for two reasons. First, Mr. Stephens fails to state the source of the standard to which he refers; how it is measured; how he applied the facts in this case against those standards or; in fact, any basis whatsoever upon which he relied when he reached the conclusion he did. Mr. Stephens' Report also offers no experience, knowledge, methodology, education or training, or application of any experience, knowledge, methodology, education or training to facts at issue leading to an opinion intended to assist the jury. Thus, Mr. Stephens' opinion regarding whether the accommodation allowed Mrs. Hillery equal access and enjoyment of the amenities offered by SCA reaches a conclusion for which Mr. Stephens provides no support. ECF No. 50-1 at 3, Opinion 5. The lack of any application of any expertise regarding what is or is not the standard against which Mr. Stephens considered facts in this case is simply not reliable expert testimony. *Barabin*, 740 F.3d at 463-64.

Second, also missing from this opinion is any discussion of what SCA could have offered, based on Mr. Stephens' expertise, that would have lead to a satisfactory accommodation offer. Instead, Mr. Stephens opines on whether a legal standard has been satisfied; that is, whether SCA's efforts to accommodate Mrs. Hillery met the equality and integrated requirements of the ADA. ECF No. 50-1 at 3.[3]

---

[3] Title III does not use the phrase "reasonable accommodation" as it appears in Title I of the ADA. Rather, to state a claim under Title III, a person must show she is disabled "as that term is defined by the ADA," there was a discriminatory policy or practice, the defendant operated a place of public accommodation, and the defendant discriminated against the plaintiff because of the plaintiff's disability by failing to make a "reasonable modification that was … necessary to accommodate the plaintiff's disability." *Fortyune v American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

13

While an expert may aid a jury to understand facts and when doing so may couch his testimony in legal terms (*Hangarter*, 373 F.3d at 1017 ("a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms"), an expert may not give an opinion as to his legal conclusion—an opinion on an ultimate issue of law—that is, whether SCA's efforts to accommodate Mrs. Hillery were reasonable. *Id*. at 1016. For the reasons stated above, Plaintiff's expert's Opinion 5 is unreliable and an inadmissible conclusion of law.

    *E.*  *Mr. Stephens' Sixth Opinion is Inadmissible*.

    Mr. Stephens sixth "professional opinion" states "that *conditioning* Mrs. Hillery's access [to SCA's amenities] upon bringing her own caregiver . . . was perhaps the most <u>unequal</u> and <u>non-integrated</u> approach to accommodating her disability." *Id*. (italics and underline in original). This is, in essence, a restatement of Mr. Stephens' Opinion 5, with a short discussion of alternative accommodations SCA could have offered. Specifically, Mr. Stephens states that SCA could have offered proper monitoring, "better training" on Mrs. Hillery's disability or provided her with a "chaperone" while she was on site. ECF No. 50-1 at 3. Mr. Stephens also suggests there are "many multiple other solutions in-between." Mr. Stephens offers no experience, education, training or special knowledge regarding what renders an accommodation offer reasonable or unreasonable. He offers nothing to suggest he used any sources or specialized knowledge to offer the list of alternatives he does. While Mr. Stephens' opinion may be that these alternatives would have resolved the issues regarding Mrs. Hillery's desired use of the SCA facilities, there is nothing underlying this opinion upon which the Court can conclude that Mr. Stephens applied some reliable expertise in a relevant discipline that led to this opinion. The Court does not doubt that Mr. Stephens has extensive experience with architectural barriers to equal access by the disabled, but Mr. Stephens offers the Court nothing upon which to conclude he has extensive experience or specialized knowledge in what is or is not equal and integrated accommodation for a person presumed to suffer from dementia who seeks access to an alleged place of public accommodation. The correctness of the conclusions Mr. Stephens reached is not what the Court has reviewed; rather, it has only reviewed the admissibility of what is stated. *Primiano*, 598 F.3d at 564. Under this standard, the Court finds this opinion

subject to exclusion because Mr. Stephens fails to establish a reliable bases in the knowledge and experience of what is or is not a reasonable accommodation under the law, and therefore, fails to meet the requirement of Fed. R. Evid. 702. *Barabin*, 740 F.3d at 463.

> **F.** *Mr. Stephens' Seventh Opinion is Inadmissible Because the Opinion is Unreliable, he Lacks the Qualifications Necessary to Opine in this Subject Matter, and the Opinion Offers a Legal Conclusion.*

Title III of the ADA at 28 C.F.R. § 36.303(a) states, in pertinent part, that "[a] public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense."

28 C.F.R. § 36.208(a) states that a public accommodation is not required to "permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others."

28 C.F.R. § 36.208(b) provides that "determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." *Id*.

The seventh expert opinion offered by Mr. Stephens states: "It is my professional opinion that providing any of the above accommodations [including, better monitoring, training to SCA staff, a chaperone "and … many others"] … would not have altered SCA's business, … presented an undue burden …, and … would not have presented a direct threat to others or … [Mrs. Hillery]." ECF No. 50-1 at 3-4. In support of this opinion, Mr. Stephens paraphrases the definitions of fundamentally altering a business, undue burden, and direct threat found in the ADA. *Id.* at 7. Mr.

15

Stephens also states (1) that SCA's core business is to provide those 55 an older with access to community amenities, (2) statistic relating to SCA's financial status (using cites that are to page numbers in an unidentified document), and (3) a very unclear, but apparent paraphrase of testimony by some unknown speaker who is supposed to have stated that "[c]annot answer whether [sic] June 2016 ban was based on health [sic] safety and welfare of anyone other than MJH." *Id*.

Specifically, with respect to Mr. Stephens' opinion that there is "no evidence that accommodating" Mrs. Hillery's "disability would fundamentally alter the nature of SCA's business," Mr. Stephens relies only upon the statement that SCA's core business is to provide amenities to seniors. *Id.* at 7. While a jury could certainly conclude that an age restricted community, such as Sun City, provides amenities to seniors and, therefore, would not need expert testimony to assist with this determination, whether this is the "core business" of SCA is a question in which Mr. Stephens professes no expertise. The Report cites to nothing other than a single statement upon which Mr. Stephens reaches this conclusion. *Id.* For Mr. Stephens' opinion to be admissible, he must be qualified as an expert in the subject matter and have provided some reliable process or methodology upon which the opinion is based. *Daubert*, 509 U.S. at 594–95; *Johnson v. American Honda Motor Co., Inc.*, 923 F.Supp.2d 1269, 1272 (D. MT., 2013) (citations omitted). Forty-five years as an architect, and experience with the ADA and FHA, do not relate to determining the core business functions of the SCA.

Moreover, an expert is to provide information to the jury that helps it understand disputed issues of fact, and not to restate evidence that can be presented without expertise. *Paatalo v. J.P. Morgan Chase Bank, N.A.*, Case No. CV-10–1192012 WL 12887697 *3 (D. MT. May 31, 2012) (when "evidence can be presented without an expert, … expert testimony should not be admitted because it would not be helpful to the trier of fact "'to understand the evidence or to determine a fact in issue'") (citation omitted). Mr. Stephens states an obvious proposition and he simply does not provide any information whatsoever upon which the Court can reasonably conclude that he is qualified to offer the opinion regarding SCA "core business." ECF No. 50-1 at 4 and 7. Reliability is a gatekeeping function of the Court and cannot be overlooked. *Barabin*, 740 F.3d at 468. For the reasons stated above, this portion of Mr. Stephens' seventh opinion is inadmissible.

Mr. Stephens next opines (after citing to an unknown source) that accommodating Mrs. Hillery "would not have presented an undue burden" and that "[a]ny proposed reasonable accommodation would cost SCA between nothing ... to less than six figures" and, therefore, would have been a "nominal cost." ECF No. 50-1 at 3 and 7. The portion of this underlying opinion appearing on page 3 of the Report—that accommodating Mrs. Hillery was not unduly burdensome— is stated as a conclusion. The second portion of the opinion, appearing on page 7 of the Report, is a repetition of facts, the sources of which are unclear. If the source of the demographic and financial information on page 7 of Mr. Stephens' report is testimony of or documents received from SCA, it is unclear why Mr. Stephens is needed as an expert to restate these facts. In contrast, had Mr. Stephens used these facts as the basis for drawing an expert opinion in a field in which he possesses specialized knowledge, and had he relied on some applicable principle to reach the opinion he did, the opinion he reached might have helped the jury understand the evidence. In such a case, his opinion would be admissible. Fed. R. Civ. P. 702; *Primiano*, 598 F.3d at 564. As stated, however, Mr. Stephens' opinion, that accommodating Mrs. Hillery "would not have presented an undue burden," is merely a conclusion for which no expertise is evident, no methodology is discussed, and therefore reliability is questionable. As such, this portion of Mr. Stephens' seventh opinion is inadmissible.

Mr. Stephens' opinion that "in failing to offer (or evaluate) any reasonable accommodation whatsoever, SCA itself is responsible for any self-conditioned 'threat'" created by Mrs. Hillery's unattended access to the fitness center is inadmissible. ECF No. 50-1 at 7-8. The law is such that determination of whether an individual poses a direct threat to themselves (or others) requires "current medical knowledge or … the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28 C.F.R. § 36.208(c). Here, Mr. Stephens reaches a legal conclusion—that any direct threat to Mrs. Hillery's own health and safety would have been mitigated by modification of policies, practices, procedures or services offered by SCA. ECF No. 50-1 at 8. Mr. Stephens states, again, that the SCA is a place of public accommodation, which must offer equal

and integrated access to the disabled. *Id.* Mr. Stephens also states, again, that the SCA Anthem Center "failed to comply with the requirements of the ADA" and "did not enter into the process to determine if a [r]easonable [a]ccommodation could be made and made no offer of accommodation for Mrs. Hillery's disability." *Id.* Mr. Stephens reaches this second portion of his "opinion" without applying any facts to his supposed specialized knowledge or experience regarding "direct threats," and without explaining on what basis he reached this conclusion. *Id.* Mr. Stephens does not explain his statement that SCA made no accommodation offer despite previously stating the one offer made was inadequate. *Compare* ECF No. 50-1 at 3, Opinion 6, to ECF No. 50-1 at 8. Most significantly, Mr. Stephens professes no medical expertise, which is required by law to do a direct threat analysis. In sum, Mr. Stephens' opinion regarding whether Mrs. Hillery presented a direct threat to herself or others, and whether that threat could be mitigated, is inadmissible because Mr. Stephens is not qualified to offer this expert opinion.

*G. Mr. Stephens' Eighth Opinion is Inadmissible Because he Lacks the Qualifications Necessary to Offer this Opinion, Thereby Rendering the Opinion Unreliable.*

Mr. Stephens states, as his "professional opinion" that "SCA intimidated, harassed, and coerced Mary Jane Hillery and Thomas Hillery by banning them from all SCA common areas" as well as by trespassing Mrs. Hillery and reporting her and Mr. Hillary to authorities. ECF No. 50-1 at 4. Support for this opinion is found on pages 8 and 9 of the Report. Specifically, the Report quotes extensively from 28 C.F.R. § 36.206 of the ADA, and less so from 42 U.S.C. § 3617 of the FHA. Mr. Stephens then sites to apparent evidence (perhaps depositions, but the sources are unidentified other than providing page numbers), stating: (i) staff, not the board of directors decided to call Henderson Elder Protective Services ("EPS"), although there was some discussion (unknown among whom) first; (ii) there was concern about Mrs. Hillery making it home, but no one called to ensure she did; (iii) EPS was called as a way of getting Mr. Hillery's attenteion; (iv) there was frustration that Mr. Hillery was not helping to resolve the situation; (v) "uncomfortable" was the word used by staff to described their interactions with Mrs. Hillery; (vi) police were called twice to have Mrs. Hillery arrested for trespassing; (vii) there were numerous emails "indicating staff frustrations having to spend time explaining [sic] ban to … [Mrs. Hillery] when she came to the

fitness center"; and (viii) there is apparently "evidence that SCA considered … [Mrs. Hillery' an 'embarrassment, discomfort, annoyance or nuisance." ECF 50-1 at 8-9. After making these observations, Mr. Stephens concludes:

> It is clear the SCA retaliated and harassed the Hillerys in response to the Hillerys attempt to have equal access to the SCA common areas. SCA did not engage in any of the above coercive acts until after the Hillerys requested an accommodation and reasonable access.

*Id*. at 9.

While this expert opinion offers a list of facts upon which Mr. Stephens relied to reach his conclusion, Mr. Stephens applies no expertise to the listed facts. He offers nothing more than the jury could do itself when reaching the conclusion he did. In sum, his "opinion" supplants the jury's role to apply facts to the law to determine an ultimate issue in this case: Was Mr. and/or Mrs. Hillery intimidated, harassed or coerced in violation of the ADA and/or FHA?

Mr. Stephens must be qualified in the field in which he offers an opinion before his "expert" testimony will be admissible. An expert must have some demonstrable expertise that he brings to bear on a subject matter that will help a jury understand a fact at issue. *Barabin*, 704 F.3d at 463 *citing Kumbo Tire*, 526 U.S. at 149. The Court is granted wide latitude in determining if there is some "reasonable measures of reliability" underlying an expert opinion. *Id.* "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id. citing Daubert*, 509 U.S. at 589. Here, Mr. Stephens' opinion, whether right or wrong, is not an "expert" opinion as there is nothing other than a list of facts upon which Mr. Stephens rests his conclusion. This is clearly an insufficient basis upon which to offer "expert" assistance to the jury. *Barabin*, 740 F.3d at 463-464.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant Sun City Anthem Community Association's Motion to Strike Plaintiffs' Expert Dale H. Stephens on Order Shortening Time (ECF No. 50) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's request to treat the Motion to Strike as an emergency is DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Strike is GRANTED with respect to Plaintiffs' Expert's Opinions 1, 2, 3, 5, 6, 7, and 8, which are inadmissible for the reasons stated herein.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike is DENIED with respect to Plaintiff's Expert Opinion 4, which is admissible for the reasons stated herein.

DATED: October 11, 2019

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE